UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re Petition of OneTaste, Inc.                               **MEMORANDUM & ORDER**
                                                                    24-MC-02518 (DG) (RML)

-----------------------------------------------------------------X

DIANE GUJARATI, United States District Judge:

Pending before the Court is the appeal of Interested Party United States (the "Government") of the Order issued by Magistrate Judge Robert M. Levy on April 24, 2025 in the above-captioned matter (the "April 24, 2025 Order"). *See* ECF No. 34. For the reasons set forth below, the April 24, 2025 Order is reversed in part.

## BACKGROUND

Familiarity with the procedural history and background of this matter is assumed herein. The Court references the history and background only to the extent necessary for purposes of the instant appeal.[1]

**I.       The Petition and April 23, 2025 Hearing**

On November 12, 2024, Petitioner OneTaste, Inc. filed a petition pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure (the "Petition") seeking, *inter alia*, "the return of confidential attorney-client communications," "the return of attorney billing invoices," "destruction of electronic copies throughout the government's ecosystem of the wrongly possessed privileged material," and sanctions (to include monetary sanctions). *See* Petition, ECF No. 13; *see also* ECF No. 15 (consisting of, *inter alia*, certain allegedly protected attorney-client communications, the May 31, 2024 Declaration of Adam Goldberg, and the November 12, 2024

---

[1]   The Court has considered all of the filings in this matter relevant to the instant appeal, including those not specifically referenced herein.

Declaration of Joanna Van Vleck).[2]  Thereafter, (1) the Government – including its Filter Team – filed responses to the Petition, *see* ECF No. 17; ECF No. 18; ECF No. 27 (attaching as exhibits the June 1, 2024 Declaration of Joanna Van Vleck, the August 1, 2024 Declaration of Joanna Van Vleck, and the October 17, 2024 Declaration of Joanna Van Vleck); (2) Petitioner filed a reply, *see* ECF No. 20 (consisting of a cover letter, a reply letter, the December 20, 2024 Declaration of Yia Vang, the December 20, 2024 Declaration of Paul E. Pelletier (with exhibits), and the July 31, 2024 Declaration of Mitchell Aidelbaum (and attachments)); and (3) the Filter Team filed a response to Petitioner's reply, *see* ECF No. 28.[3]

On February 26, 2025, the undersigned referred the Petition to Magistrate Judge Levy. *See* February 26, 2025 Order.

On March 26, 2025, the Government moved to dismiss the Petition. *See* ECF No. 29 (arguing, *inter alia*, that "because the only 'deprivation' alleged in the Petition is of the attorney-client privilege itself, which is not 'property' within the meaning of Rule 41(g), OneTaste's Petition fails as a matter of law"). On April 9, 2025, Petitioner responded in opposition to the Government's motion to dismiss, arguing both that it was untimely and that it was without merit. *See* ECF No. 31.[4]

---

[2]  Petitioner filed an earlier petition. *See* ECF No. 1. At a conference held on October 21, 2024, the Court granted Petitioner's oral motion to withdraw that petition without prejudice. *See* October 21, 2024 Minute Entry.

[3]  Various documents in this matter were filed under seal and the parties dispute whether certain of those documents should be permitted to remain under seal. *See generally* docket. In light of the instant Order, the parties shall file a joint letter by July 8, 2025 setting forth their position(s) with respect to the pending disputes regarding sealing. The joint letter will replace the pending requests for sealing/unsealing.

[4]  The instant Order addresses only the appeal of the April 24, 2025 Order. The Government shall file a letter by July 8, 2025 indicating whether it wishes to withdraw its motion to dismiss in light of the instant Order.

2

On April 23, 2025, Magistrate Judge Levy held a hearing on the Petition. *See* April 23, 2025 Minute Entry; *see also* Transcript of April 23, 2025 hearing ("Tr."). The Government was represented at the hearing by five Assistant United States Attorneys ("AUSAs"), one of whom was a member of the Filter Team (the "Filter Team AUSA"). During a portion of the hearing, the Filter Team AUSA was the only AUSA present in the courtroom; the transcript of that portion of the proceeding was sealed. *See* Tr. 38-55.

At the hearing, Petitioner and the Government – including the Filter Team – were heard on the Petition. *See generally* Tr. No witnesses testified at the hearing. *See generally* Tr. The Government indicated that it should be given an opportunity to cross-examine the declarants on whose declarations Petitioner relied in support of its privilege assertions, but that issue was not expressly addressed by Magistrate Judge Levy. *See* Tr. 36-37; *see generally* Tr.

At the hearing, the Filter Team AUSA discussed in some detail certain of the declarations submitted by Petitioner, pointing out various deficiencies with – and limitations of – the declarations and arguing that the declarations did not serve to satisfy Petitioner's burden with respect to privilege, and the Filter Team AUSA discussed in some detail the underlying documents at issue, touching on issues of both content and creation. *See, e.g.*, Tr. 35-36, 39-51, 65, 67-69. During the hearing, Magistrate Judge Levy indicated that he had not yet reviewed the documents at issue. *See* Tr. 40, 47-51.

The issue of waiver of privilege also was addressed at the hearing, though to a lesser extent than the threshold issue of whether any of the material at issue at any time enjoyed the protection of the attorney-client privilege. *See generally* Tr.

At the hearing, the Government asserted that it would not be appropriate for Magistrate Judge Levy to order the Government to return/destroy documents as to which Petitioner was

3

claiming attorney-client privilege protection because, *inter alia*, those documents were being litigated in front of the United States Supreme Court in connection with the criminal case bearing docket number 23-CR-00146.  *See* Tr. 8-9, 27-29; *see also* Tr. 7 (Government arguing, in substance, that the pending litigation before the Supreme Court effectively mooted the need to have a decision on the Petition, at least for the time being).

At the hearing, the Government also asserted that counsel for Petitioner had made numerous factual misstatements to Magistrate Judge Levy at the hearing and the Government indicated that it might be useful to Magistrate Judge Levy for the Government to outline for him the various misstatements after getting a copy of the transcript of the hearing.  *See* Tr. 65-69, 75-80.[5]

Magistrate Judge Levy reserved decision on the Petition at the conclusion of the April 23, 2025 hearing.  *See* Tr. 85.

## II.  The April 24, 2025 Order

On April 24, 2025 – the day after the hearing on the Petition – Magistrate Judge Levy issued an Order granting in part and denying in part the Petition.

The April 24, 2025 Order reads in its entirety as follows:

> ORDER granting in part and denying in part [ECF No. 13] Motion to Compel. Following lengthy oral argument and careful review of the parties' submissions with respect to the documents marked at a hearing held before me on 4/23/2025 as Filter Team 1, 2 and 3 (the "Documents"), Petitioner's Motion to Compel [ECF No. 13] is granted in part and denied in part as follows: (1) Petitioner has met its burden of establishing that the Documents, which are clearly marked as attorney-client privileged, are in fact privileged.  (2) Based on the record before the Court, the Government has not met its burden of showing that the privilege has been waived.  (3) Petitioner has not demonstrated that the Government's conduct is sanctionable.  Accordingly, the Government is directed to return the Documents to Petitioner and to destroy any and all copies.  Petitioner shall retain the

---

[5]  Magistrate Judge Levy did not expressly address the latter issue.  *See generally* Tr.

4

>Documents until the completion of all proceedings in this matter and in the related criminal case (23 CR 146).

*See* April 24, 2025 Order.[6]

### III. The Stay

On April 25, 2025, the Government requested a stay of the April 24, 2025 Order in anticipation of filing an appeal of a portion of the April 24, 2025 Order and requested a briefing schedule for the appeal. *See* ECF No. 33. The Court granted the requests for a stay and a briefing schedule. *See* April 25, 2025 Order.

### IV. The Instant Appeal

On May 8, 2025, the Government filed its appeal. *See* ECF No. 34. On the same day, the Filter Team filed a letter in support of the Government's appeal. *See* ECF No. 35.

The Government argues that Magistrate Judge Levy's "privilege determination and [his] related directive compelling the government to return and destroy its copies of the relevant documents were erroneous" and that the Court "should therefore set aside those portions of the Order and deny OneTaste's motion in full." *See* ECF No. 34 at 1. The Government argues that the Court's review of the April 24, 2025 Order should be *de novo* but that even under the more deferential "clearly erroneous or contrary to law" standard, the Government should prevail on its appeal. *See* ECF No. 34 at 6-7 & n.6.

The Government sets forth that the Petition concerns three categories of materials, which the Government describes as follows: "(1) two Microsoft Word documents voluntarily provided by Individual-1 to the government (the 'Word Documents'); (2) photographs of iPhone screenshots voluntarily provided by Individual-13 to the government (the 'Screenshots'); and (3)

---

[6] Notwithstanding that the Petition sought relief with respect to certain attorney billing records, the April 24, 2025 Order was silent as to those records. *See generally* April 24, 2025 Order.

5

various attorney billing invoices produced by a billing company (the 'Billing Company') in response to a subpoena (the 'Bills') (collectively, the 'Challenged Materials')." *See* ECF No. 34 at 1.  The Government argues that "[f]rom the face of [the April 24, 2025 Order], the only basis for the conclusion that the Challenged Materials were privileged was the finding that the documents at issue were 'clearly marked as attorney-client privileged'" and that the "decision to treat this point as dispositive warrants reversal."  *See* ECF No. 34 at 7 (citing caselaw for proposition that label affixed to document is not itself dispositive as to whether privilege applies); *see also* ECF No. 34 at 8 (arguing that Magistrate Judge Levy's "singular reliance on attorney-client stamping when making [his] privilege determination was erroneous and should be rejected by this Court," that the April 24, 2025 Order's "foundational holding . . . has no legal basis and should be set aside," and that "placing limited weight on the 'attorney client' label not only accords with the law and the facts of this case, but also with common sense" because "[t]he notion that someone can shield from production or review any document that she simply marks as 'attorney client privileged' would create warped incentives, frustrate the administration of justice, and undermine the sanctity of the attorney-client relationship").

The Government further argues that "[n]ot only did [Magistrate Judge Levy's] determination run afoul of the law, but it was also erroneous based on the facts before [him]." *See* ECF No. 34 at 8 (noting, *inter alia*, that "the Order ruled that the Challenged Materials were categorically privileged even though OneTaste agreed that two pages of the Screenshots were not privileged at all" and asserting that "the Order may conflict with findings this Court previously made as to the Screenshots" (referencing September 27, 2024 proceeding in criminal case bearing docket number 23-CR-00146)); *see also* ECF No. 35-1 (Filter Team discussing the record with respect to the nature of the Word Documents and Screenshots and the creation of

6

those documents and arguing that Petitioner has failed to meet its burden of showing that those documents are privileged attorney-client communications and that Magistrate Judge Levy's privilege determination "was not supported by the record before [him]").[7]

The Government also argues that Magistrate Judge Levy erroneously shifted the burden with respect to the issue of waiver of privilege to the Government and that "[w]hen the proper legal framework is applied to the facts here, OneTaste cannot meet its burden to demonstrate that its claims of privilege have not been waived." *See* ECF No. 34 at 8-9; *see also* ECF No. 34 at 10 (arguing that "[w]hen the waiver burden is properly assigned, OneTaste cannot surmount that hurdle").

And, the Government argues that Magistrate Judge Levy erred in ordering the return/destruction of the material at issue given the status of the criminal case bearing docket number 23-CR-00146 and binding precedent, *see* ECF No. 34 at 13-14 (citing *Allen v. Grist Mill Capital LLC*, 88 F.4th 383, 396-97 (2d Cir. 2023)), and that Rule 41(g) is not an appropriate mechanism for obtaining the relief sought by Petitioner via the Petition, *see* ECF No. 34 at 11-13.

---

[7] The Filter Team – which, as evidenced by its various submissions and its arguments at the April 23, 2025 hearing, undertook a close and careful review of the record evidence in this matter – argues, *inter alia*, (1) that Petitioner has failed to show that the primary purpose in creating the Word Documents and Screenshots was to obtain legal advice from law firm Davis Goldberg & Galper ("DGG"), rather than to obtain traditional public relations services from public relations firm Trident (pointing to, *inter alia*, "Stories for Trident" labeling and billing information reflecting payments to Trident and absence of payments to DGG and discussing relationship between DGG and Trident); (2) that it is unclear whether the Word Documents and Screenshots even qualify as "communications" between a client and its counsel; (3) that even if the longer of the two Word Documents is considered to be a communication from a client to counsel, Petitioner has not met its burden of establishing that confidentiality was preserved; (4) that there was, in any event, waiver of any privilege with respect to the Word Documents; and (5) that the timing of creation, *inter alia*, belies a finding that the Screenshots in their entirety enjoy the protection of the attorney-client privilege. *See generally* ECF No. 35-1.

In Petitioner's briefing in opposition to the Government's appeal – which Petitioner filed *ex parte* and under seal and provided only to the Filter Team – Petitioner acknowledges that the party invoking attorney-client privilege bears the burden of establishing its elements. *See* ECF No. 36-1 at 3. Petitioner also appears to acknowledge that the party asserting the privilege bears the burden of establishing that the privilege was not waived. *See* ECF No. 36-1 at 4 (referencing Petitioner's "burden to show that the privilege was not waived"). Petitioner further acknowledges that a marking or heading on a document "in and of itself is not dispositive." *See* ECF No. 36-1 at 3. Petitioner argues, however, that here, the sworn declarations submitted by Petitioner establish privilege with respect to the Word Documents and Screenshots (presumably, not to include the pages that Petitioner previously agreed were not in fact privileged materials) and that Petitioner did not waive privilege. *See generally* ECF No. 36-1. Petitioner also argues that Rule 41(g) is an appropriate mechanism for obtaining the relief sought. *See* ECF No. 36-1 at 6.

In its reply to Petitioner's opposition, the Filter Team reiterates that the declarations on which Petitioner relies in support of its claim that it has met its burden of demonstrating that certain materials are privileged do not in fact satisfy Petitioner's burden. *See* ECF No. 40-1 at 3-5. The Filter Team details various omissions and inconsistencies with respect to the declarations. *See* ECF No. 40-1 at 3-4 (arguing, *inter alia*, that the declarations "attempted to obfuscate exactly who was involved in the creation" of certain of the material at issue). The Filter Team also argues waiver with respect to the material at issue. *See* ECF No. 40-1 at 4-5. And the Filter Team reiterates the arguments that the direction to return/destroy the material at issue is not appropriate in light of the status of the criminal case bearing docket number 23-CR-00146, *see* ECF No. 40-1 at 5-6, and that the Petition does not properly fall under the ambit of Rule 41(g),

8

*see* ECF No. 40-1 at 5.

## DISCUSSION

As set forth below, the April 24, 2025 Order is reversed in part. With the exception of the determination that Petitioner has not demonstrated that the Government's conduct is sanctionable, the April 24, 2025 Order cannot, on this record, stand.

### I.     Standard of Review

In reviewing the April 24, 2025 Order, the Court applies the "clearly erroneous or contrary to law" standard of review. *See* 28 U.S.C. § 636(b)(1).[8]

### II.    Attorney-Client Privilege

As the United States Court of Appeals for the Second Circuit has stated: "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice" and the party asserting the privilege "bears the burden of establishing its essential elements." *See United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The party asserting the privilege also bears the burden of establishing that the privilege has not been waived. *See Oakley v. MSG Networks, Inc.*, No. 17-CV-06903, 2025 WL 307413, at *1 (S.D.N.Y. Jan. 27, 2025).

### III.   The Determination That Petitioner Has Met its Burden of Establishing Privilege Was Clearly Erroneous and Contrary to Law and Is Reversed

Upon consideration of the applicable law and the record to date – including the relevant submissions by the parties and the transcript of the April 23, 2025 proceeding before Magistrate Judge Levy – the Court reverses the portion of the April 24, 2025 Order that concluded that

---

[8]  The Court's decision would be the same under the *de novo* standard urged by the Government.

9

"Petitioner has met its burden of establishing that the Documents . . . are in fact privileged."[9] The Court finds that this determination was clearly erroneous and contrary to law.

Although Magistrate Judge Levy referenced "lengthy oral argument" and "careful review of the parties' submissions with respect to [the three documents marked at the April 23, 2025 hearing]," he did not specifically reference any record evidence in support of the determination that Petitioner has met its burden of establishing that the documents at issue are privileged other than the markings on the documents. *See* April 24, 2025 Order. The markings alone, however, are not sufficient to establish that Petitioner has met its burden, as the parties appear to agree. *See Nat'l Day Laborer Org. Network v. U.S. Immigr. and Customs Enf't*, 486 F. Supp. 3d 669, 692 (S.D.N.Y. 2020) (noting that "while sometimes relevant, the label affixed to a document is not itself dispositive as to whether the privilege applies" and collecting cases); ECF No. 34 at 7-8 (collecting cases); ECF No. 36-1 at 3. And the other record evidence – none of which was expressly addressed in the April 24, 2025 Order – does not support the determination that Petitioner has met its burden as to any of the documents at issue.

Nothing in the record establishes that Petitioner has met its burden of demonstrating that any document that was the subject of the April 24, 2025 Order enjoys the protection of the attorney-client privilege. To the contrary, the record reflects that Petitioner has fallen far short of establishing that any such document enjoys any such protection. Indeed, far from demonstrating that the documents at issue were communications between a client and its attorney for the purpose of obtaining or providing legal advice and were intended to be and were in fact kept confidential, declarations filed by Petitioner cast serious doubt on certain of Petitioner's

---

[9] As noted above, the term "the Documents" as defined in the April 24, 2025 Order does not include the billing records.

10

arguments about the creation, nature, and/or purpose of the various documents and at least certain of the declarations appear to have been designed to obfuscate, as persuasively argued by the Government. *See, e.g.*, ECF No. 35-1 at 3-10 (Filter Team discussing, *inter alia*, document metadata and declarations of Joanna Van Vleck, Yia Vang, and Adam Goldberg); *see generally* Tr.

It is particularly notable that the declaration of Attorney Adam Goldberg (of the law firm at the relevant time known as DGG) lacks important specifics. *See generally* Goldberg Declaration, ECF No. 15-3. For example, although the Goldberg Declaration states that "[i]n connection with DGG's representation of One Taste, DGG requested that One Taste provide it with certain information relating to the company" and that "[s]ubsequent to DGG's request for information, One Taste representatives provided DGG with information through, among other ways, *a document*," *see* Goldberg Declaration ¶¶ 7-8 (emphasis added), the Goldberg Declaration fails to identify – in any way – the document provided, *see generally* Goldberg Declaration. The omission is telling.[10] Further, none of the documents as to which Petitioner is claiming attorney-client privilege protection appears on its face to be seeking or providing legal advice and the Goldberg Declaration does not shed any light on any of the relevant documents in this regard. The omissions in the Goldberg Declaration are significant here and undercut a claim of privilege.

It is also notable that certain of Joanna Van Vleck's declarations differ significantly from other of Joanna Van Vleck's declarations as to relevant chronology and the creation of certain material. *See* June 1, 2024 Van Vleck Declaration, ECF No. 27-1; August 1, 2024 Van Vleck

---

[10] Also conspicuously absent from the Goldberg Declaration is any mention of public relations firm Trident. *See generally* Goldberg Declaration.

11

Declaration, ECF No. 27-2; October 17, 2024 Van Vleck Declaration, ECF No. 27-3; November 12, 2024 Van Vleck Declaration, ECF No. 15-4. The shifting narrative is telling. And the *timing* of the shift with respect to chronology is particularly notable in light of the conference held on September 27, 2024 in the criminal case bearing docket number 23-CR-00146. At that conference, the Court, *inter alia*, addressed certain material that is the subject of the instant appeal – namely, the Screenshots (referred to as the "Purportedly Privileged Document" in the criminal case bearing docket number 23-CR-00146). At the September 27, 2024 conference, the Court expressly noted that "the evidence before the Court, including evidence relating to chronology and content, reflects that the Purportedly Privileged Document is not the document that defendants assert was provided to DGG" and the Court expressly referenced the June 1, 2024 Van Vleck Declaration. *See United States v. Cherwitz*, No. 23-CR-00146 (E.D.N.Y.), Transcript of September 27, 2024 conference, ECF No. 274 at 22-23; *United States v. Cherwitz*, No. 23-CR-00146 (E.D.N.Y.), June 1, 2024 Van Vleck Declaration, ECF No. 127-1.[11] The chronology set forth in the Van Vleck declarations post-dating September 27, 2024 differs materially from that set forth in the Van Vleck declarations pre-dating September 27, 2024, with the earlier declarations placing Petitioner's purported relevant involvement with DGG as beginning in June 2017 and the later declarations moving up the timeframe to May 2017 or earlier. *Compare* June 1, 2024 Van Vleck Declaration ¶¶ 6-7 and August 1, 2024 Van Vleck Declaration ¶¶ 8, 11 *with* October 17, 2024 Van Vleck Declaration ¶¶ 6-9 and November 12, 2024 Van Vleck Declaration ¶¶ 6-9. Considered as a whole, the Van Vleck declarations undercut a claim of privilege.

---

[11] Counsel for Petitioner was present in the courtroom at the September 27, 2024 conference. *See* Transcript of September 27, 2024 conference at 17.

As noted above, the Government was not afforded an opportunity to test the veracity of the declarations filed in the instant matter via cross-examination of the declarants. Even absent such cross-examination, however, the declarations cannot bear the weight Petitioner places on them, as the Government persuasively argues.

The portion of the April 24, 2025 Order that concluded that Petitioner has met its burden of establishing privilege is REVERSED.

## IV. The Determination Regarding Waiver Was Clearly Erroneous and Contrary to Law and Is Reversed

The Government argues that Magistrate Judge Levy "compounded the error of [his] incorrect privilege determination by asserting that the government had the burden to demonstrate that the privilege had been waived" and that "[t]his burden shifting was erroneous and is an independent basis for reversal." *See* ECF No. 34 at 8-9 (citing caselaw for proposition that party asserting privilege bears the burden of demonstrating that it has not been waived). Petitioner appears to acknowledge that it has the burden to show that the privilege was not waived and Petitioner argues that it met that burden. *See* ECF No. 36-1 at 4.

Although the portion of the April 24, 2025 Order that concluded that "the Government has not met its burden of showing that the privilege has been waived" has little – if any – practical effect in light of the Court's reversal of Magistrate Judge Levy's determination that Petitioner has met its burden of demonstrating privilege, the portion of the April 24, 2025 Order that concluded that "the Government has not met its burden of showing that the privilege has been waived" was clearly erroneous and contrary to law and therefore it too is REVERSED.[12]

---

[12] The Court notes that the Government – including its Filter Team – makes various persuasive arguments as to why even had privilege been established, it was waived.

13

**V.     The Direction That the Government "Return" the Documents at Issue to Petitioner and "Destroy Any and All Copies" Was Clearly Erroneous and Contrary to Law and Is Reversed**

In light of the above, Magistrate Judge Levy's direction that the Government "return" the documents at issue to Petitioner and "destroy any and all copies" was clearly erroneous and contrary to law and also is REVERSED.[13]

\* \* \*

The portion of the April 24, 2025 Order concluding that "Petitioner has not demonstrated that the Government's conduct is sanctionable" and therefore denying in part the Petition – as to which portion no party has appealed – remains undisturbed.

## CONCLUSION

The April 24, 2025 Order is REVERSED in part as specified above and accordingly, the Petition, ECF No. 13, is DENIED as to the documents addressed in the April 24, 2025 Order.

SO ORDERED.

/s/ Diane Gujarati
DIANE GUJARATI
United States District Judge

Dated: July 1, 2025
       Brooklyn, New York

---

[13] Even had Petitioner met its burden of demonstrating privilege here with respect to the documents that were the subject of the April 24, 2025 Order (and of demonstrating the absence of waiver), directing the return/destruction of the documents would not be appropriate in light of the fact that the documents were – and appear to remain – the subject of litigation. It also bears noting that the documents at issue properly remain part of the record in the criminal case bearing docket number 23-CR-00146.  *See United States v. Cherwitz*, No. 23-CR-00146 (E.D.N.Y.), ECF No. 336 (sealed).